

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2009

# Evans v. Empl Benefit

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3552

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Evans v. Empl Benefit" (2009). *2009 Decisions.* Paper 1846.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1846

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-3552
_____

LISA A. EVANS,

Appellant

v.

EMPLOYEE BENEFIT PLAN,
CAMP DRESSER & MCKEE, INC.;
CAMP DRESSER & MCKEE, INC.;
CAMP DRESSER & MCKEE, INC. BOARD OF DIRECTORS;
METROPOLITAN LIFE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-04915)
District Judge: Honorable Renee M. Bumb
_____

Submitted Under Third Circuit LAR 34.1(a)
on February 2, 2009

Before: RENDELL, JORDAN, and ROTH, Circuit Judges.

(Filed: February 20, 2009)

_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

This case concerns the denial of Long Term Disability ("LTD") benefits to the plaintiff, Lisa Evans, who worked as an environmental engineer with defendant Camp Dresser & McKee ("CDM"). Defendant Metropolitan Life Insurance Company ("MetLife") administered CDM's disability insurance plan (the "Plan"). Evans received Short Term Disability benefits after complaining of shortness of breath and receiving an initial diagnosis of asthma. MetLife denied her claim for LTD benefits on May 24, 2000, after Evans's pulmonologist, Dr. Gross, reported that she was not convinced that Evans's condition was work related, that the asthma was well controlled on medication, and that it was safe for Evans to return to work.[1] Evans appealed. MetLife declined to reverse its

---

[1] Evans saw several physicians: Dr. Robin Gross, a pulmonologist; Dr. Nancy Beggs, an internist; and Dr. Marla Tiffany, an allergist. Dr. Gross's March 1, 2000, report to Dr. Beggs said that Evans's history and a positive methacholine challenge were consistent with asthma, and noted that Evans worked as an environmental engineer and had been exposed to fumes. After additional office visits, Dr. Gross reported that Evens had never had symptoms in the field or after coming home from work, and that she had reported nausea as a symptom of her last episode, which was inconsistent with asthma but might point to a viral cause. Dr. Gross recommended that Evans continue to use Flovent, Serevent, and Singulair, but noted that her asthma did not appear to be occupational, because Evans had other triggers and symptoms unconnected with her work. Dr. Gross discussed with Evans that some of her symptoms might be related to anxiety, and Evans became very agitated and upset. Dr. Tiffany diagnosed Evans with asthma but made no objective findings. She put no limits on Evans's physical capabilities, and noted that she could ride 100 miles on a bike. Dr. Tiffany recommended that Evans return to work but avoid work in the field. Dr. Beggs told Dr. Tiffany that the etiology of Evans's illness remained unknown, but recommended that Evans avoid asthma triggers and occupational exposures.

decision, citing Dr. Gross's opinion and other medical information indicating that Evans's asthma was not disabling.

Evans filed suit against both CDM and MetLife in the District Court for the District of New Jersey on October 17, 2003. The District Court had jurisdiction over the case pursuant to ERISA, 28 U.S.C. § 1132(e). The District Court granted the defendants' motions for summary judgment and denied Evans's motion for summary judgment on July 30, 2007. We have jurisdiction over the appeal under 28 U.S.C. § 1291. We exercise plenary review over summary judgment decisions.

## I. Is CDM a proper defendant?

In a claim for wrongful denial of benefits under ERISA, the proper defendant is the plan itself or a person who controls the administration of benefits under the plan. 29 U.S.C. § 1132(a)(1)(B). Evans argues that CDM shared discretionary authority with MetLife to interpret the Plan, determine eligibility for benefits, and make claims decisions. CDM says that it had no such authority, and therefore cannot be subject to liability. The District Court held that CDM was not a proper defendant.

Evans points to two sections of the Plan to support her position that CDM is a proper defendant: first, the "Statement of ERISA Rights," which says "You have the right to have the Plan administrator review and reconsider your claim." (App. 110.) Another section of the Plan says that "[i]n carrying out their respective responsibilities

3

under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." (App. 109.)  In the ERISA information section, CDM is listed under "Name and Address of Employer and Plan Administrator."  This, Evans argues, shows that CDM is a plan administrator and a proper defendant.

CDM points out that the Plan specifically delegates to MetLife the discretion to determine eligibility for benefits:  "MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract."  (App. 86.)  It argues that the Statement of ERISA Rights is a generic statement required by federal law, and not a substantive contract provision.  *See Cruthis v. Metropolitan Life Ins. Co.*, 356 F.3d 816, 818 (7th Cir. 2004).  CDM also points out that the "respective responsibilities" portion of the discretionary authority section does not support Evans's contention that CDM determines eligibility for benefits.

Exercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B), and Evans has not shown that CDM has any authority or responsibility for administering benefits under the Plan.  The use of CDM's address in the contact information for "Employer and Plan Administrator" does not show that CDM has discretion to determine eligibility.  *See Curcio v. John Hancock Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994); *see also Daniel v. Eaton Corp.*, 839 F.2d

4

263, 266 (6th Cir. 1988) ("Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits."). The Plan's language makes it clear that MetLife, not CDM, has discretion to interpret the contract's terms. Evans is correct that the Plan does not specifically give MetLife *exclusive* discretion, but she has presented no evidence that CDM had any role in benefits determinations. Indeed, her communications about the Plan during the period she was seeking disability benefits were directed toward MetLife, not CDM. CDM was not responsible for administering benefits or determining eligibility, and therefore is not a proper defendant. We will affirm the District Court's grant of summary judgment to CDM.

## II. MetLife's Denial of Benefits

Under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), if the ERISA plan gives the administrator discretion to interpret the terms of the benefit plan, a court reviews the administrator's decision for abuse of discretion. The Plan in this case grants MetLife such discretionary authority: "MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract." (App. 86.)

Recently, the Supreme Court opined in *MetLife v. Glenn*, 128 S. Ct. 2343 (2008), that where there is a conflict of interest under *Firestone* when a plan administrator both evaluates claims for benefits and pays those claims, the district court should weigh the

conflict of interest as one factor in determining whether there was an abuse of discretion. 128 S. Ct. at 2351-53. Our previous jurisprudence had instructed the district court to apply a "heightened standard of review" or "heightened scrutiny" in such cases. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 387 (3d Cir. 2000).

Here, MetLife both evaluates and pays claims under the Plan, and all parties acknowledged that such a dual role created a conflict. The District Court, acting before publication of the *Glenn* decision and in accordance with *Pinto*, applied a heightened standard of review. We will apply the new standard ourselves on appeal, unless we believe that remand is necessary to avoid prejudice.[2] Here, the heightened review applied by the District Court was more favorable to the plaintiff than the new standard, so we find no prejudice to her in our considering this appeal using the *Glenn* standard without remanding.

Even with *Pinto*'s heightened standard, the District Court found that MetLife's denial of benefits was reasonable and supported by substantial evidence. The court held

---

[2] *See, e.g.*, *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978) (holding that an appellate court may hear a new issue resulting from a recent change in the law as long as the party against whom the issue is raised is not prejudiced and would not have tried the case differently); *see also Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. . . . Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt or where injustice might otherwise result.") (internal quotations omitted).

that MetLife's decision was based on the objective medical recommendations of Evans's treating pulmonologist, Dr. Gross, who cleared Evans to return to work. Evans admitted that Dr. Gross knew that Evans's job exposed her to dust and fumes. She argued that MetLife should have given more weight to reports from other physicians, but the Court observed that none of the other doctors Evans consulted reported any objective etiology for her shortness of breath.

Evans also pointed to an inaccurate initial job description submitted by CDM to MetLife when she sought Short Term Disability benefits (the CDM employee who filled out the form answered "No" to an inquiry about whether Evans was required to "be exposed to dust, gas, or fumes" in the course of her job). (App. 920.) The Court acknowledged that such an inaccuracy could potentially affect the claim decision-making process, but concluded that the inaccurate description (made before Evans received her asthma diagnosis) did not preclude a full and fair review of Evans's claim, because MetLife's decision was based primarily on Dr. Gross's recommendation, not on the initial job description, and Dr. Gross's findings detailed Evans's occupational exposures.

There is no reason to remand for application of the *Glenn* standard to the facts. Viewing the conflict of interest here as one factor, rather than applying a heightened standard of review, does not alter the outcome. The District Court correctly concluded that MetLife had given Evans's claim a full and fair review and that its denial of LTD benefits did not amount to an abuse of discretion. We would affirm the District Court's

7

decision, even if the Supreme Court had not clarified in *Glenn* that MetLife's conflicted position does not change the standard of review, but is one of several factors to be considered in a district court's review for abuse of discretion. We do so applying *Glenn* as well.

We will affirm the District Court's decision that MetLife did not abuse its discretion in denying Evans's LTD claim.

### III. Evans's Other Claims

Evans makes several other claims, none of which merit fulsome analysis. Evans points to a New Jersey regulation that discretionary clauses are void as contrary to public policy, but the regulation is only applicable as of January 1, 2008, and only prohibits those provisions that claim to reserve sole discretion to the carrier. *See* N.J. Admin. Code. § 11:4 - 58.4. MetLife's policy does not reserve sole discretion.

Evans also makes a breach of fiduciary claim, but she acknowledged in the District Court that the claim was an alternate form of relief to recover LTD benefits. The Supreme Court has held that "equitable relief" in ERISA means a remedy typically available in equity, and that a claim for money due under a contract is "quintessentially an action at law." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002) (quoting *Wal-Mart Stores, Inc. v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000)).

Evans claims that she requested a description of benefits from CDM and CDM did

not send it promptly, in violation of 29 U.S.C. § 1132(c). CDM had switched carriers just before Evans's request and did not have the updated benefits descriptions booklet; it sent Evans the previous plan's booklet with a note of explanation. When Evans requested the updated booklet, CDM sent it promptly. The District Court declined to impose statutory penalties on CDM for its actions, and we will not disturb that decision. As such, we will not address CDM's statute of limitations arguments as to 29 U.S.C. § 1132(c).

Finally, Evans argues that the benefits description was legally deficient because it did not precisely state that she had a right not to have her LTD benefits claim denied based on an inaccurate job description. ERISA requires that a description must be written clearly and accurately, and must be comprehensive enough to "reasonably apprise participants" of their rights and obligations under the plan. 29 U.S.C. § 1022(a). We agree with the District Court that it would be unreasonable for a benefits description to spell out every conceivable circumstance in which benefits may or not be denied, and that the benefits description in this case complied with ERISA's requirements.

## Conclusion

For the reasons set forth above, we will AFFIRM the Order of the District Court.